# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Judge Nina Y. Wang

Civil Action No. 21-cv-01184-NYW

A.S.K.,

      Plaintiff,

v.

KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration,[1]

      Defendant.

---

## MEMORANDUM OPINION AND ORDER

---

      This civil action arises under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401–33, for review of the final decision made by the Commissioner of Social Security Administration (the "Commissioner" or "Defendant") denying the application for Disability Insurance Benefits ("DIB") filed by A.S.K. ("Plaintiff or "A.S.K.").[2]  After carefully considering the Parties' briefing, the Administrative Record, and the applicable case law, this court respectfully **AFFIRMS** the Commissioner's decision.[3]

---

[1] On July 9, 2021, President Biden appointed Kilolo Kijakazi as Acting Commissioner of Social Security.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Commissioner Kijakazi should be substituted for Andrew M. Saul, former Commissioner of Social Security, as the defendant in this suit.  No further action need be taken to continue this suit pursuant to the Social Security Act, 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

[2] The Local Rules for this District provide that "[a]n order resolving a social security appeal on the merits shall identify the plaintiffs by initials only."  D.C.COLO.LAPR 5.2(b).  Accordingly, this court refers to Plaintiff using her initials only.

[3] This civil action was originally assigned to the undersigned in her capacity as Magistrate Judge for a decision on the merits pursuant to the Parties' consent.  *See* [Doc. 10]; 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; D.C.COLO.LCivR 72.2.  On July 22, 2022, Judge Nina Y. Wang was appointed

## BACKGROUND

Plaintiff, born January 17, 1962, filed an application for DIB on July 10, 2018, alleging she became disabled on May 22, 2018.  [Doc. 9-5 at 179].[4]  Plaintiff claims she could not work due to the following medical conditions: irritable bowel syndrome ("IBS"), major depressive disorder, post-traumatic stress disorder ("PTSD"), hypertension, bowel polyps, stomach erosions, abdominal pain, and diarrhea.  [Doc. 9-3 at 86–87].  The Social Security Administration denied Plaintiff's claim on January 30, 2019.  [Id. at 98–99].  Plaintiff requested a hearing before an administrative law judge ("ALJ") on May 16, 2018.  [Doc. 9-4 at 126].  ALJ Erin Justice presided over the hearing, which was held telephonically, on June 16, 2020, see [Doc. 9-2 at 36], during which the ALJ heard testimony from Plaintiff and Vocational Expert ("VE") Cydnee Burnett.  [Id. at 57].

At the hearing, Plaintiff testified she had not worked since May 22, 2018 due to uncontrollable diarrhea and depression.  [Id. at 62–63].  Plaintiff testified she would suffer five to ten episodes of diarrhea per day, with each episode lasting roughly ten to 15 minutes.  [Id. at 71].  Following episodes, Plaintiff testified she was unable to work around the house and would lie down from exhaustion.  [Id. at 70].  She also had trouble sleeping; she would have episodes and experience bowel incontinence at night and nap during the day.  [Id. at 71–72].  Plaintiff testified she had difficulty eating and leaving the house even prior to the COVID-19 pandemic, either to shop, meet friends, or attend church; and she does not grocery shop but occasionally does laundry,

---

as a United States District Judge and retained assignment to this action as the presiding judge.  See [Doc. 18].

[4] When citing to the Administrative Record, the court utilizes the docket number assigned by the CM/ECF system and the page number associated with the Administrative Record, found in the bottom right-hand corner of the page.  For all other documents the court cites to the document and page number generated by the CM/ECF system.

cooks and can drive. [*Id*. at 62–64]. Plaintiff testified she has previously taken Imodium and Benefiber for diarrhea, but that it did not help; and that she sees her general practitioner and gastroenterologist, and has a standing appointment with her therapist. [*Id*. at 66, 72–73].

Following Plaintiff's testimony, the VE summarized Plaintiff's work history as a data entry clerk. [*Id*. at 73–74]. The VE also answered hypotheticals from the ALJ regarding types of work individuals with varying restrictions could perform. *See generally* [*Id*. at 74–76]. First, the ALJ asked the VE to consider the following hypothetical:

> assume an individual of [Plaintiff's] age, education, and past work, who needs to work within five minutes of a bathroom, can understand, remember, and perform simple work that can be learned in three months, can work in proximity to coworkers, but not collaborate with them, can have occasional superficial interaction with the general public, cannot do strict production paced work such as assembly line work, and can tolerate occasional changes in the work place.

[Doc. 9-3 at 74]. The VE stated that this would eliminate all of Plaintiff's past relevant work, but this hypothetical individual could work as a laundry worker, prep cook, or order filler, all with a medium exertional level, and that these jobs exist in the national economy. [*Id* at 75]. Next, the ALJ asked the VE to consider a hypothetical individual of

> [P]laintiff's' age, education and past work, who can occasionally lift 20 pounds, frequently lift 10 pounds. There would be no standing, walking or seated restrictions, would frequently be off task, is incapable of even a low-stress job, can frequently move head in all direction, frequently climb ladders, stairs, twist and stoop, and less than occasionally squat.

[*Id* at 76]. The VE testified that these restrictions would eliminate all work and there would be no transferrable skills. [*Id*.]. The VE also testified that the Dictionary of Occupational Titles does not address proximity to restroom, or off-task tolerances and teamwork, and therefore her testimony regarding proximity to the restroom was based on her knowledge "of how those jobs are performed and those industry standards through job analysis." [*Id*.].

Next, Plaintiff's attorney examined the VE. Plaintiff's attorney modified the first hypothetical to add the following restriction: "in addition to working within five minutes of the bathroom . . . [the hypothetical individual of Plaintiff's age, education, and past work] would have trips to the bathroom that would last between . . . 10 to 15 minutes at a time, and this would be unplanned, unscheduled and in addition to what's generally allowed at a … competitive job." [*Id* at 77]. The VE testified that these restrictions would eliminate all work for such an individual. [*Id*.].

On July 1, 2020, the ALJ issued a decision denying Plaintiff's claim. [*Id*. at 33]. The ALJ determined Plaintiff met the insured status requirements of the Act through September 30, 2022, and had not engaged in substantial gainful employment since May 22, 2018. [*Id*. at 38]. At Step Two, the ALJ found Plaintiff had the following severe impairments: major depressive disorder, social anxiety disorder, PTSD, and a probable somatic symptom disorder. [*Id*. at 39]. The ALJ also noted that "[a]lthough the record shows references to or evidence of hypertension, hypothyroidism, and irritable bowel syndrome with diarrhea, these conditions are not considered 'severe' impairments, either singly or in combination with other impairments, that have more than minimally impacted the claimant's ability to work." [*Id*.]. At Step Three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or equals the severity of one of the listed impairments in the Regulations. [*Id*. at 41]. At Step Four, the ALJ concluded Plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with the following non-exertional limitations:

> she needs to work within 5 minutes of a bathroom. The claimant can understand, remember and perform simple work that can be learned in 3 months. She can work in proximity of coworkers but not collaborate with them. The claimant can tolerate occasional superficial interaction with the general public. She cannot perform strict production pace work such as assembly line work. The claimant can tolerate occasional changes in the workplace.

4

[*Id*. at 43].  The ALJ found Plaintiff unable to perform past relevant work but there exist several jobs in the national economy that she can perform with her restrictions.  [*Id*. at 49].

In her decision, the ALJ discussed the opinions of State agency physicians Merry Alto, MD ("Dr. Alto") and Carol Phelps, MD ("Dr. Phelps), both of whom concluded that Plaintiff's "physical conditions" are "non-severe."  [*Id*. at 41]; *see also* [Doc. 9-3 at 94–115].  Dr. Alto opined that Plaintiff's conditions "may be expected to cause some of the alleged symptoms; however, her statements concerning the intensity, persistence and limiting effects of the symptoms are inconsistent with objective medical evidence."  [Doc. 9-3 at 94].  Dr. Phelps similarly concluded that Plaintiff's physical conditions are "not severe enough to keep [Plaintiff] from working" and that Plaintiff can "adjust to other work."  [*Id.* at 115].  Despite being non-examining experts, the ALJ found both opinions to be "persuasive" because the ALJ considered them to be consistent with the record.  [Doc. 9-2 at 41].

The ALJ also discussed the opinion of Nurse Gemma Stella of Peak Internal Medicine ("Ms. Stella").  [*Id.*].  Ms. Stella completed a Physical Residual Functional Capacity Questionnaire on June 10, 2020, [Doc. 9-7 at 525–29], wherein she opined that Plaintiff is unable to work due to incontinence, the inability to eat, and pain associated with her IBS.  [*Id.* at 526].  She furthered opined that Plaintiff would require "variable and possibly extensive" rests during the day.  [*Id*. at 527].  In reviewing Plaintiff's other records from Ms. Stella, however, the ALJ observed that Plaintiff established care with Ms. Stella in late 2019, "at which time [she] made no specific complaints about frequent diarrhea episodes or irritable bowel syndrome"; she "denied abdominal pain, constipation, diarrhea, flank pain, frequency and urgency"; and "[d]espite some complaints of hand and back pain, examinations have not revealed any significant abnormalities."  [Doc. 9-2 at 40].

Plaintiff filed a Request for Review of the Hearing Decision on July 7, 2020, which the Appeals Council denied on March 25, 2021.  [*Id*. at 1–5].  Plaintiff sought judicial review of the Commissioner's final decision in the United States District Court for the District of Colorado on April 29, 2021, invoking this court's jurisdiction to review the Commissioner's final decision under 42 U.S.C. §405(g) in this action.  *See* [Doc. 1].  Because this matter is ripe for consideration, I consider the Parties' arguments below.

### LEGAL STANDARDS

An individual is eligible for DIB under the Act if they are insured, have not attained retirement age, have filed an application for DIB, and have a disability as defined in the Act.  42 U.S.C. § 423(a)(1).  The claimant must prove they were disabled prior to last date insured. *Flaherty v. Astrue*, 515 F.3d 1067, 1069 (10th Cir. 2007).  Under the Act, an individual is disabled "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work.  42 U.S.C. §§ 423(d)(2)(A).  The disability must last or be expected to last for at least 12 months.  42 U.S.C. §§ 423(d)(1)(A).   When a claimant has one or more physical or mental impairments, the Commissioner must consider the combined effects in making a disability determination.  42 U.S.C. §§ 423(d)(2)(B).

Under the Act, there is a five-step evaluation process to determine whether a claimant is disabled:

1.  Whether the claimant has engaged in substantial gainful activity;

2.  Whether the claimant has a medically severe impairment or combination of impairments;

3.  Whether the claimant has an impairment that meets or medically equals any listing found at Title 20, Chapter III, Part 404, Subpart P, Appendix 1;

4.  Whether the claimant has the Residual Functional Capacity ("RFC") to perform her past relevant work; and

5.  Whether the claimant can perform work that exists in the national economy, considering the claimant's RFC, age, education, and work experience.

*See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)–(v); *see also Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing five steps in detail).  "The claimant bears the burden of proof through step four of the analysis[,]" and the Commissioner bears the burden of proof at step five.  *Neilson v. Sullivan*, 992 F.2d 1118, 1120 (10th Cir. 1993).  If an ALJ determines "at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (internal quotation marks omitted).

In reviewing the Commissioner's decision, the court limits its review to considering whether the ALJ's findings are supported by substantial evidence and if they applied the correct legal standards.  *Flaherty*, 515 F.3d at 1069.  The court may not reweigh evidence nor substitute judgement for the Commissioner's, but failure to apply proper legal standards may be sufficient grounds for reversal independent of substantial evidence analysis. *Hendron v. Colvin*, 767 F.3d 951 (10th Cir. 2014). Substantial evidence is more than a "mere scintilla" and is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion. *Flaherty*, 515 F.3d at 1069.  Evidence is not substantial if it is overwhelmed by the record or is only a conclusion. *Williams*, 849 F.2d at 750.  The court may not replace the Commissioner's decision between two plausible and conflicting views, even if the court would find differently in a *de novo* review.  *Lax*, 489 F.3d at 1084.  However, a court must "meticulously examine the record as a whole, including

anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005).

## ANALYSIS

Plaintiff identifies three overall issues in the ALJ's decision which she argues warrant remand. *See generally* [Doc. 12 at 1]. First, Plaintiff challenges the ALJ's findings at Step Two, arguing that the ALJ improperly applied the legal standards in her findings regarding the breadth of work-related limitations related to Plaintiff's IBS. *See* [Doc. 12 at 14–16]. Second, Plaintiff challenges the ALJ's findings at Step Four, arguing that the ALJ's conclusions regarding Plaintiff's RFC are inconsistent with the record. *See* [*id*. at 16–18]. Third, Plaintiff contends that the ALJ failed to properly consider Plaintiff's subjective testimony regarding her pain, fatigue, and other subjective symptoms. [*Id*. at 18–19]. In response, the Commissioner argues the ALJ properly considered Plaintiff's severe and non-severe impairments, including subjective testimony about Plaintiff's IBS, and the record indicates Plaintiff could work. *See generally* [Doc. 15].

For the following reasons, I conclude that the ALJ's determination was sufficient and should be affirmed.

## I.   Step Two: Plaintiff's Severe Impairments

At Step Two, the Commissioner determines whether a claimant has any severe physical or mental impairments. *See Williams*, 844 F.2d at 750. "To find a 'severe' impairment at step two requires only a threshold showing that the claimant's impairment has 'more than a minimal effect on [her] ability to do basic work activities.'" *Covington v. Colvin*, 678 F. App'x 660, 664 (10th Cir. 2017) (quoting *Williams*, 844 F.2d at 751). But "the claimant must show more than the mere presence of a condition or ailment." *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997). Indeed, an ALJ may conclude that an ailment is not a medically determinable impairment—a particularly important finding, as the ALJ must consider only *medically determinable impairments* (severe or

not) at subsequent steps.  *See Cook v. Colvin*, No. CV 15-1164-JWL, 2016 WL 1312520, at *4 (D. Kan. Apr. 4, 2016) ("Limitations attributed to impairments which are medically determinable but are not severe must be considered at later steps in the evaluation, whereas alleged limitations attributable to impairments which are not medically determinable must not be considered at later steps.").

Here, the ALJ found that Plaintiff has four severe impairments: major depressive disorder, social anxiety disorder, PTSD, and a probable somatic symptom disorder.  [Doc. 9-2 at 39].  The ALJ also noted "references to or evidence of . . . irritable bowel syndrome with diarrhea" in Plaintiff's record, but did not consider these conditions to be "'severe' impairments, either singly or in combination with other impairments, that have more than minimally impacted the claimant's ability to work."  [*Id.*].  Specifically, the ALJ analyzed "[m]edical evidence from treating gastroenterologists [which] show[ed] the claimant has described experiencing chronic diarrhea since childhood with indications of a remote small bowel resection."  [*Id.* (citations omitted)].  Notably, the ALJ referenced a colonoscopy Plaintiff received in 2015, stating the findings were "essentially normal and demonstrated a patent end-to-side ileo-colonic anastomosis as well as negative biopsies for colitis."  [Doc. 9-2 at 39 (citing [Doc. 9-7 at 466, 517])].

The ALJ also relied on the opinions of State physicians Dr. Alto and Dr. Phelps, who both concluded that Plaintiff's physical condition was "non-severe."  [*Id*. at 41].  Despite being non-examining experts, the ALJ found both opinions to be "persuasive" because the ALJ considered them to be consistent with the record.  [*Id.*].

The ALJ further considered the opinion of Ms. Stella.  [*Id*. at 40].  The ALJ found Ms. Stella's opinion that Plaintiff is unable to control her bowel movements at work and needs variable, unscheduled breaks during an eight-hour workday to be "not persuasive" or supported by

significant objective medical clinical signs and findings.  [*Id.*].  Particularly, the ALJ found Ms. Stella starkly differed from the State physicians and the record in her opinion.  [*Id.*].  The ALJ found the colonoscopy to be "essentially normal," concluding that Plaintiff's IBS was not serious enough to cause severe impairments.  [*Id.* at 39].  The ALJ also noted that Plaintiff is on an allegedly ineffective regimen of medicines.  [*Id.*].  The ALJ concluded that "the medical evidence, and the record as a whole," supported a finding that Plaintiff "has no significant limitations as a result of the above conditions; certainly none that would impose more than a minimal effect on her ability to perform basic work-related activities."  [*Id.* at 40].

On appeal, Plaintiff insists the ALJ failed to properly consider Plaintiff's IBS and diarrhea. *See* [Doc. 12 at 17].  Plaintiff contends that the ALJ's "findings with respect to the dearth of work-related limitations related to [her] irritable bowel syndrome and diarrhea" were based on a predetermined conclusion and not substantial evidence.  [*Id.* (capitalizations omitted) (arguing the ALJ's "discussion consists of nothing more than picking and choosing from the evidence to support a predetermined result")].  In particular, Plaintiff challenges the ALJ's reliance upon the July 2015 colonoscopy—which, as mentioned, was "essentially normal and demonstrated a patent end-to-side ileo-colonic anastomosis"—as evidence that Plaintiff's IBS impairment was non-severe.  *See* [*id.*].  Plaintiff contends that the ALJ's analysis of and reliance upon the 2015 colonoscopy fails the substantial evidence test on the basis that "a patent end-to-side ileo-colonic anastomosis is *not* essentially normal, and, in physician's notes, is identified as a possible cause of [Plaintiff's] chronic incontinence and diarrhea."  [*Id.* at 18].

 Plaintiff also disagrees with the ALJ's finding there was insufficient objective medical evidence that Plaintiff needed unscheduled breaks, arguing that the ALJ overlooked evidence Plaintiff has "undergone multiple surgeries that could cause or exacerbate bowel problem[s]."

[*Id*.].   According to Plaintiff, the ALJ improperly focused on the records from Plaintiff's appointment with Ms. Stella, where Plaintiff's complaints did not focus on GI issues, rather than considering the "nine other times" in the record which mention Plaintiff's IBS or its treatment, or "the presence of IBS in the formal list of diagnoses resulting from the visit."   [*Id*. (citing [Doc. 9-7 at 479–85, 488])].   Plaintiff insists the ALJ's analysis "smacks of 'cherry-picking' the record and thus coming to a predetermined conclusion not based on substantial evidence."   [*Id*. at 16].

The court respectfully disagrees that Plaintiff's objections warrant reconsideration of the ALJ's decision, and finds harmless any alleged error with respect to the ALJ's decision to find Plaintiff's IBS or diarrhea non-severe.   In *Allman v. Colvin*, the United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") explained that at Step Two "a claimant need only establish, and an ALJ need only find, one severe impairment[,]" as a finding of one severe impairment requires the ALJ to proceed to the next step considering *all* of the claimant's ailments (severe or not) anew.   813 F.3d 1326, 1330 (10th Cir. 2016).   Accordingly, the court observed, "the failure to find a particular impairment severe at step two is not reversible error when the ALJ finds at least one other impairment is severe."   *Id.*; *see also Smith v. Colvin*, 821 F.3d 1264, 1266–67 (10th Cir. 2016) (holding as harmless error the ALJ's failure to find a severe left shoulder impairment at step two when the ALJ considered shoulder impairments in assessing the plaintiff's RFC); *Howard v. Berryhill*, No. 17-cv-00276-RBJ, 2017 WL 5507961, at *4 (D. Colo. Nov. 17, 2017) ("While it certainly would have been prudent for the ALJ to consider Ms. Howard's chronic pain syndrome diagnosis at step two . . . the ALJ's failure to do so is not reversible error under *Allman* because she determined that two of Ms. Howard's other impairments were severe.").

Here, as mentioned, the ALJ found four severe impairments with respect to Plaintiff, *see* [Doc. 9-2 at 39], and then "proceeded with the analysis as required."   *Troe v. Berryhill*, No. 16-

cv-02794-MEH, 2017 WL 2333101, at *7 (D. Colo. May 30, 2017) (relying on *Allman*, 813 F.3d at 1330). Thus, the ALJ did not err at step two by failing to find any further severe impairments—namely, Plaintiff's alleged IBS and diarrhea—before proceeding to Step Three of the analysis. *See id*.

Moreover, the court finds Plaintiff's assertion that the ALJ ignored in Plaintiff's medical records the "nine other times . . . where [Plaintiff's] IBS or the treatment for it was mentioned," [Doc. 12 at 18 (citing "AR 479–485, 488")], to be, at best, an exaggeration of the substance of the record. Indeed, these nine alleged references of Plaintiff's gastrointestinal issues are contained in the notes from the *same* initial appointment Plaintiff had with Ms. Stella on October 15, 2019, which she attended for the express purpose of "establish[ing] care" and chiefly complained of "some pain in her hands" and other issues non-related to her alleged IBS or diarrhea. *See* [Doc. 9-2 at 479–85, 488].

In sum, I conclude that the ALJ applied the proper legal standards in making her determinations at Step Two.

## II.     Step Four: The RFC Assessment

Plaintiff also argues the ALJ's RFC assessment at Step Four is "internally inconsistent, and does not constitute a logical conclusion from the evidence." [Doc. 12 at 19 (capitalizations omitted)]. In formulating a claimant's RFC, the ALJ must consider the combined effect of all the claimant's medically determinable impairments, including the severe and non-severe. *See Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013); *Ray v. Colvin*, 657 F. App'x 733, 734 (10th Cir. 2016) (unpublished). A claimant's RFC is the most work the claimant can perform, not the least. 20 C.F.R. § 404.1545; SSR 83-10. "'The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'" *Hendron v.*

*Colvin*, 767 F.3d 951, 954 (10th Cir. 2014) (quoting SSR 96-8p, 1996 WL 374184, at *7 ("The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence.")).  The ALJ need not identify "affirmative, medical evidence on the record as to each requirement of an exertional work level before an ALJ can determine RFC within that category," and the court will uphold the RFC assessment if it is consistent with the record and supported by substantial evidence.  *See Howard v. Barnhart*, 379 F.3d 945, 947, 949 (10th Cir. 2004).

In assessing a claimant's RFC, the ALJ must address the record's medical source opinions. *See Vigil v. Colvin*, 805 F.3d 1199, 1201–02 (10th Cir. 2015).  For applications filed after March 27, 2017, the Social Security regulations (the "Regulations") provide that an ALJ must evaluate the persuasiveness of a medical opinion using the following factors: (1) supportability; (2) consistency; (3) the provider's relationship with the claimant, including the length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, and extent of the treatment relationship, and whether the treatment relationship is an examining relationship; (4) the medical source's area of specialization; and (5) other factors "tending to support or contradict a medical opinion or prior administrative medical finding."  20 C.F.R. § 404.1520c(c); *Pearson v. Saul*, No. 20-cv-01808-NRN, 2021 WL 2549214, at *3 (D. Colo. June 22, 2021).  The Regulations provide that supportability and consistency "are the most important factors" in determining the persuasiveness of a medical opinion.  20 C.F.R. § 404.1520c(b)(2).

While the ALJ must explain her approach to these two factors, she need not expound on the remaining three factors unless she finds that two or more non-identical medical opinions are equally well-supported and consistent with the record.  *Id.* at §§ 416.920c(b)(2)–(3); *see Vellone v. Saul*, 1:20-cv-00261 (RA) (KHP), 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021).  "[A]

13

supportability inquiry examines how well a medical source supported and explained their opinion." *S.P., v. Kijakazi*, No. 20-cv-00717-CMA, 2021 WL 6197283, at *5 (D. Colo. Dec. 30, 2021) (citing *Vellone*, 2021 WL 319354, at *6); *see* 20 C.F.R. § 416.920c(c)(1).   "Consistency, on the other hand, is 'an all-encompassing inquiry' that focuses on how well a medical source opinion is supported, or not supported, by the entire record." *Id.* (citation omitted); *see also* 20 C.F.R. § 416.920c(c)(2).

At bottom, the ALJ must "consider all evidence in [the] case record when [making] a determination or decision whether [the claimant] is disabled." 20 C.F.R. § 404.1520(a)(3).   This means that, in addition to discussing supporting evidence, the ALJ must "discuss the uncontroverted evidence [s]he chooses not to rely upon, as well as significantly probative evidence [s]he rejects." *Mestas v. Kijakazi*, No. 20-cv-01865-REB, 2021 WL 3030224, at *3 (D. Colo. July 19, 2021) (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996)).

Here, the ALJ's RFC finding included that Plaintiff retains the ability to "perform a full range of work at all exertional levels but with the following nonexertional limitations: she needs to work within 5 minutes of a bathroom." [Doc. 9-2 at 43].   With respect to the bathroom proximity limitation, the ALJ referenced Plaintiff's testimony she has experienced unpredictable episodes of diarrhea at work and out in public. *See* [*id.* at 43–44].   The ALJ also discussed Plaintiff's testimony about her abdominal pain, which impacts her ability to sit for prolonged periods of time, and about the length and frequency of her diarrhea episodes.   [*Id.* at 44].

On appeal, Plaintiff does not appear to challenge the ALJ's reliance upon the medical source opinions in reaching her conclusion that Plaintiff can perform work at all exertional levels but with the nonexertional limitation of needing to work within five minutes of a restroom. *See* [Doc. 9-2 at 43].   Rather, Plaintiff argues the ALJ did not sufficiently consider the VE's testimony

that a hypothetical individual of Plaintiff's age, education, and past work who needs to work within five minutes of a restroom *and* use the restroom on an unscheduled basis about five times a day would eliminate all work. *See* [Doc. 12 at 20]; *see also* [Doc. 9-2 at 76–77]. Put differently, it is Plaintiff's position that close proximity to a restroom is useless if Plaintiff is unable to use the bathroom as she needs during the workday and, therefore, "is not something a reasonable person would accept to support a conclusion that it would allow [Plaintiff] to work." *See* [Doc. 12 at 20].

The court respectfully disagrees, and finds Plaintiff's reliance on the VE's testimony to be improper. "The purpose of vocational expert testimony is to determine whether jobs exist for someone with the claimant's precise disabilities." *Ash v. Sullivan*, 748 F. Supp. 804, 809 (D. Kan. 1990). When presenting hypotheticals to the VE, an ALJ must include all the limitations they find to exist based on the evidentiary record for such hypotheticals to be sufficient. *See Barnett v. Apfel*, 231 F.3d 687, 690 (10th Cir. 2000); *see also Bean v. Chater*, 77 F.3d 1210 (10th Cir. 1995) ("The ALJ was not required to accept the answer to a hypothetical question that included limitations claimed by plaintiff but not accepted by the ALJ as supported by the record"). "However, vocational testimony elicited by hypothetical questions that do not relate with precision to the claimant's impairments does not constitute substantial evidence to support the [Commissioner's] decision." *Ash*, 748 F. Supp. at 809. If a vocational expert is posed a hypothetical question based on substantial evidence in the record, the ALJ may not ignore unfavorable answers to reach a finding of nondisability. *See id.* at 804. However, the ALJ is only required to consider answers to hypotheticals that include all limitations that are established by substantial evidence in the record. *See Barnett*, 231 F.3d at 690; *see also Talley v. Sullivan*, 908 F.2d 585, 588 (10th Cir. 1990) ("[T]he hypothetical posed to the vocational expert did not set forth only impairments which had been accepted as true by the ALJ. Therefore, his opinion was not

binding on the ALJ.").   Further, although a plaintiff's counsel may "prompt advantageous testimony . . . by requiring the expert to assume the unestablished, conclusive fact[s]" about the plaintiff's condition, such hypotheticals do not bind the ALJ.  *Gay v. Sullivan*, 986 F.2d 1336, 1341 (10th Cir. 1993).

In light of these standards, the court finds that the ALJ did not err as she was under no obligation to consider the testimony elicited by the VE's hypothetical questions insofar as those questions were not based on substantial evidence.  Indeed, although the VE initially testified— based on the hypothetical provided by the ALJ—that work existed in the national economy for a hypothetical person of Plaintiff's age, education, and past work, *see* [Doc. 9-2 at 74], it was not until Plaintiff's counsel included the restriction of needing to go to the bathroom five times per day (for ten to fifteen minutes per episode) that the VE testified that such restriction "would eliminate all work," [*id.* at 77].  Plaintiff argues this testimony constitutes evidence that the ALJ ignored and should have considered in her RFC finding.  *See* [Doc. 16 at 5].  However, the hypothetical the ALJ, as opposed to Plaintiff's counsel, issued the VE "contained all of the limitations found to exist by the ALJ."  *Barnett,* 231 F.3d at 687.  Thus, the ALJ was not required to consider the VE's testimony regarding the unscheduled rest breaks based on the hypothetical posed by Plaintiff's counsel.

The court finds the Fifth Circuit's decision in *Huet v. Astrue* instructive here.  In that case, the ALJ offered several hypotheticals including the limitations the ALJ found to be supported by substantial evidence, and the VE testified to a number of jobs available in the national economy the claimant would be able to do.  375 F. App'x 373, 377 (5th Cir. 2010).  On cross-examination, the claimant's counsel amended the hypothetical to include a limitation that was unsupported by the evidence but found in the claimant's testimony: "a hypothetical claimant who missed three to

four days of work per month would not be able to be employed in any of [the jobs previously mentioned by the VE]." *Id.* The Fifth Circuit rejected the claimant's argument that the "cross-examination testimony" warranted reversal because "the ALJ was not required to agree that the symptoms would cause [the claimant] to miss three to four days of work per month" and did not find the claimant's "allegations concerning her symptoms were supported by substantial medical evidence in the record." *Id.*

Similarly here, the ALJ was not required to consider the additional non-exertional requirement of five ten- to fifteen-minute unscheduled trips to the bathroom because she considered Plaintiff's testimony regarding such episodes and found that the substantial evidence in the record was inconsistent with Plaintiff's testimony in this regard. [*See generally* Doc. 9-2]; *see also Huet*, 375 F. App'x at 373 ("[T]he ALJ was not required to agree with a claimant that the symptoms would cause her to miss three to four days of work per month."). An ALJ does not "err in rejecting the vocational expert's opinion that [a] claimant would be totally disabled if her testimony at the hearing were believed completely, [if] the record did not establish the limitations described by claimant." *Barnett*, 231 F.3d at 687. Accordingly, the court finds that the ALJ appropriately considered the relevant evidence and did not err at Step Four of the analysis.[5]

## III.   Whether the ALJ Properly Considered the Functional Effects of Plaintiff's Subjective Symptoms

Finally, Plaintiff challenges whether the ALJ properly considered "the functional effects of [Plaintiff's] pain, fatigue, and other subjective symptoms." [Doc. 12 at 21 (capitalizations

---

[5] Notably, Plaintiff does not identify any other evidence upon which the ALJ could have found that Plaintiff indeed required the number and length of restroom breaks her counsel stated in the hypothetical to the VE. *See* [Doc. 12; Doc. 16]. Rather, she acknowledges the VE's testimony was based on a hypothetical person: "the VE also testified that *if* Ms. Kramer actually needed to use this nearby restroom on an unscheduled basis about five times a day it would eliminate all work." [Doc. 12 at 20 (emphasis added)].

omitted)].   When analyzing a claimant's evidence of pain, courts must consider (1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a loose nexus between the proven impairment and the claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, the claimant's pain is in fact disabling. *Wilson v. Astrue*, 602 F.3d 1136 (10th Cir. 2010). In determining whether a claimant's subjective complaints of pain are credible, the Regulations provide that an ALJ may consider the following factors:

(i)  daily activities;

(ii)  the location, duration, frequency, and intensity of pain or other symptoms;

(iii)  precipitating and aggravating factors;

(iv)  the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms;

(v)  treatment, other than medication, received for relief of pain or other symptoms;

(vi)  any measures used to relieve pain or other symptoms; and

(vii)  other factors concerning functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

Moreover, this court is guided by the principle that "[c]redibility determinations are peculiarly the province of the finder of fact, and [the court] will not upset such determinations when supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (internal quotation and citation omitted). In addition, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler*, 68 F.3d at 391 (internal quotation and citation omitted). "Inconsistencies are a reasonable

basis upon which to find a claimant not credible." *Marchand v. Colvin*, No. 14-cv-02533-RM, 2016 WL 1089740, at *8 (D. Colo. Mar. 21, 2016) (citing *Wilson*, 602 F.3d at 1146).

As mentioned above, the ALJ concluded that Plaintiff has the RFC to perform a full range of work at all exertional levels but with the nonexertional limitation of needing to work within five minutes of a restroom. *See* [Doc. 9-2 at 43]. In reaching this conclusion, the ALJ found Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." [*Id*. at 44]. With respect to Plaintiff's allegations regarding the interference her IBS and diarrhea caused in her daily living activities, the ALJ found that "two factors weigh[ed] against considering these allegations to be strong evidence in favor of finding [Plaintiff] disabled." [*Id.*]. First, the ALJ could not objectively verify Plaintiff's allegedly limited daily activities "with any reasonable degree of certainty." [*Id.*]. Second, even assuming Plaintiff is as limited as she claims, the ALJ found it "difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the medical evidence and other factors discussed in th[e] decision." [*Id.*].

In addition, the ALJ noted that Plaintiff "ha[s] described engaging in some routine activities of daily living such as personal care tasks, preparing simple meals, doing basic household chores such as laundry and straightening up, and can shop in store and drive." [*Id.*]. The ALJ also considered Plaintiff's statements made during a consultative examination in December 2018, where Plaintiff "indicated she was capable of independent bathing, dressing, and simple meal preparation" and described "a usual daily routine of getting up early, drinking coffee, doing some cleaning, laundry and occasional shopping, checking her email, playing games on her phone, and watching television." [*Id.* (citations omitted)]. The ALJ found that "the physical and mental capabilities required in performing many of the above activities the claimant described replicate

those necessary for obtaining and maintaining employment" in that "such activities require significant functional ability and some consistent form of attention and are not consistent with the claimant's allegations of disabling symptoms." [*Id.* at 44–45]. The ALJ further opined that "[t]here is minimal to no support for the opinions that the claimant's mental, or physical, conditions result in such a severe limitation such that she cannot perform work on a regular and continuing basis." [*Id.* at 46].

When reviewing physician opinions, the ALJ must consider the supportability and consistency of the opinions in comparison to the rest of the record. *See* 20 C.F.R. § 404.1520c. The ALJ may also consider other factors, including relationship with the claimant, whether that physician is a specialist in the area in which they are giving an opinion, and other relevant factors, but is not required to do so. *See id.* Here, the ALJ found that Ms. Stella's opinion that Plaintiff is disabled by her IBS was "not supported by any significant objective medical clinical signs and findings," as "treatment records from Ms. Stella reveal minimal abnormalities on exams [and] other medical evidence from treating gastroenterologists shows [Plaintiff] routinely exhibits a soft, non-distended abdomen, normal bowel sounds, and no abdominal tenderness, guarding or masses." [Doc. 9-2 at 40]. Furthermore, the ALJ noted that a treating psychiatrist, Dr. Miller, "suggested that the claimant's [IBS] and diarrhea prevents the claimant from working." [*Id.*]. However, the ALJ found Dr. Miller's opinion to be inconsistent with the medical evidence and the record as a whole: "[i]n viewing the longitudinal medical evidence of record, the bulk of treatment notes show minimal abnormalities on repeated exams and reflect the claimant's symptoms are generally stable and favorably respond to medication." [*Id.*]. In addition, the ALJ noted that Dr. Miller is a psychiatrist who "does not appear to have any expertise in gastroenterology conditions." [*Id.* at 46–47]. Notwithstanding Dr. Miller's lack of expertise in this area, the ALJ took into consideration

Plaintiff's "reasonable need to be in close proximity to a bathroom" when determining her RFC. [*Id.* at 47].

Plaintiff insists the ALJ failed to make proper findings regarding the functional effects of her "pain, fatigue, and other subjective symptoms." [Doc. 12 at 21 (capitalizations omitted)]. Plaintiff also maintains that the ALJ's discussions of her "daily activities are largely irrelevant because . . . they are not related to [Plaintiff's] ability to work, and are performed under conditions that are difference [sic] from those in a competitive workplace." [*Id.* at 22]. Respectfully, the court is not persuaded.

First, although Plaintiff argues that the ALJ did not consider the effect of her "fatigue," *see* [Doc. 12 at 21], as Defendant correctly points out, "Plaintiff does not identify any place in the record where she claimed that she was unable to work because of fatigue or tiredness," [Doc. 15 at 8]. *See* [Doc. 12; Doc. 16].

Second, Plaintiff argues that, apart from "an erroneous evaluation" of her daily activities, the ALJ's decision is "largely silent" as to any discussion of the remaining factors prescribed under the Regulations, *see* 20 C.F.R. § 404.1529(c)(3).[6] [Doc. 12 at 22]. Therefore, Plaintiff's argument continues, "the ALJ's conclusions regarding the functional effects of these impairments was not based on substantial evidence, and the matter should be remanded for this error to be remedied." [*Id.*]. Significantly, however, Plaintiff fails to point to any subjective symptoms she mentioned which the ALJ failed to consider in making her determinations regarding Plaintiff's RFC. *See*

---

[6] As mentioned, those factors are "(i) daily activities;  (ii) the location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (v) treatment, other than medication, received for relief of pain or other symptoms; (vi) any measures used to relieve pain or other symptoms; and (vii) other factors concerning functional limitations and restrictions due to pain or other symptoms." 20 C.F.R. § 404.1529(c)(3).

[Doc. 12 at 21–22; Doc. 16 at 4–5].  Rather, it appears that Plaintiff's dispute refers again to the VE's reference to a hypothetical individual similar to Plaintiff who would need to use the restroom up to five times per day.  *See* [Doc. 16 at 5 (arguing that the ALJ "credited" the "VE's testimony that an individual who needed to use the restroom five times a day for between ten and fifteen minutes was unemployable" on the grounds that the ALJ restricted Plaintiff "to working within five minutes of a restroom")].  Plaintiff's failure to address these issues is notable because, as the claimant, it is Plaintiff who "bears the burden of proof through step four of the analysis[,]" while the Commissioner bears the burden of proof at step five. *Neilson v. Sullivan*, 992 F.2d 1118, 1120 (10th Cir. 1993).[7]

Plaintiff also asserts the ALJ should have found Plaintiff's 2015 colonoscopy—in particular, that it demonstrated a "patent end-to-side ileo-colonic anastomosis"—to be objective evidence of Plaintiff's need to take unscheduled breaks.  *See* [Doc. 12 at 17–18].  However, the ALJ was entitled to, and she did, resolve the discrepancy between records regarding the "possible cause" of Plaintiff's alleged gastrointestinal issues, [*id.* at 18], and the record medical evidence, which the ALJ found repeatedly indicated normal clinical findings.  *See* [Doc 9-2 at 39–40]; *see also Allman*, 813 F.3d at 1333 (finding that "[e]ven if the record contained support for "both the notion that [the claimant had] extreme deficiencies" and the notion that Plaintiff's limitations were not that severe, the "ALJ was entitled to resolve such evidentiary conflicts").

---

[7] Indeed, Plaintiff also asserts, for instance, that the ALJ erroneously "relied on what she deemed a lack of *objective* medical clinical signs and findings that indicate [Plaintiff] needed to take unscheduled breaks." [Doc 12 at 15].  However, Plaintiff bears the burden of proof until the final step of the DIB process, and it was Plaintiff's responsibility to produce evidence to the ALJ that Plaintiff needed different RFC restrictions or that Plaintiff was disabled.  *See* 20 C.F.R. §404.1513(a).

As explained herein, the ALJ correctly applied the regulations in determining the persuasiveness of Plaintiff's medical opinions and their consistency with other information in the administrative record.  *See Guillar v. Commissioner*, 845 F. App'x 715, 719 (10th Cir. 2021) (observing it is the ALJ's responsibility to weigh the evidence).  Likewise, Plaintiff fails to show the ALJ committed reversible error by not finding Plaintiff's IBS or diarrhea to be severe impairments or that the ALJ failed to properly consider those conditions in assessing Plaintiff's RFC.  *See Bales*, 576 F. App'x at 797 (noting that "there is no requirement that an ALJ discuss every piece of evidence [in the record]," but only to consider the whole record").

Accordingly, I conclude that, after considering the facts and evidence, the ALJ's determination that Plaintiff's complaints of disability lack medical foundation is supported by substantial evidence.  *See id.* (noting that "[c]redibility is the province of the ALJ" (citation and quotations omitted)); *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987) ("Substantial evidence is more than a scintilla, but less than a preponderance.").  Because the ALJ's decision is supported by more than a scintilla of evidence, the court will not disturb her findings.  *See id.*; *see also Smith*, 821 F.3d at 1266 (stating the court "cannot reweigh the evidence or substitute [its] judgment for the administrative law judge's").

## CONCLUSION

For the reasons stated herein, the court hereby **AFFIRMS** the Commissioner's final decision.

DATED:  August 10, 2022                                          BY THE COURT:

_____
Nina Y. Wang
United States District Judge